Caruthers, J.,
delivered the opinion of the Court.
The question raised in this case is upon the construction of a deed of gift, made by John Beaty to his daughter Polly Owen, wife of Joshua Owen, of a negro girl Celia in 1846. It is in these words:
“Know all men by these presents that I, John Beaty, Sr., for and in consideration of the love and affection'I have for my daughter Polly Owen, wife of Joshua Owen, do give a certain negro girl slave named Celia, about nine years of age, to be the right and property of said Polly during her life; and for the love and affection I have for her, I give to her the aforesaid girl Celia, to her and her heirs, to have and to hold said negro girl free from the lawful claims of all and every person whomsoever. Given under my hand and seal this 9th January, 1846.
Test.: Elias Bowden.
his John X Beaty. mark. <xxxx><> £ SEAL. Y $oooo<>
Sampson Solomon.”
This was duly proved and registered the same year, and the slave held under it by the husband and wife.
In September, 1850, the complainant .obtained a decree *225 in the Chancery Court at Livingston against the defendant Owen and others for about five hundred and fifty dollars, and an execution issued for the same, which was returned “no property found.” The sheriff refused to levy upon this girl, because of the disputed title, and this bill was filed to remove the cloud and subject the slave to the payment of the judgment.
On the 23d of October, 1850, after the said decree of Meredith was obtained, John Beaty executed another deed of gift, conveying the slave explicitly to the said Polly and her children by name, for their separate use. This can, of course, have no effect upon the case, but it must turn upon the proper construction of the deed of 1846. Yet it may operate as an obstacle in' executing the decree, and should be removed.
The form of the first deed is very peculiar, and was evidently drawn by an unskilful hand. We have to take such papers as we find them, and give them the best interpretation we can, under the guides furnished by precedents and the rules of law. He first gives her the slave ’“for her life,” and, in the next lines and same sentence, in fee “to her and her heirs.” What estate does she take ? for life or absolutely ? There has been no little difficulty in the cases in settling the rights of parties claiming under formal deeds where the estate given in the premises is different from that described in what is called the habendum. Its office, where the deed is formal, is properly to determine what estate or interest is granted by the deed. But this may be and often is performed in the premises. This embraces all the parts of a deed which precede the habendum, and comprehends the names *226 of the parties, the consideration, and the certainty of the thing granted. But it would be good if the grantee were first named in the habendum, provided there were no other grantee named in the premises; (Co. Lit., 26, b, note;) or if there were, provided the estate given in the habendum to the new grantee was not immediate, but by way of remainder. The habendum part of a deed was originally, and is yet where strict form is observed, used to determine the interest granted, or to enlarge, explain, or qualify the premises. But it cannot divest an estate already vested in the premises, for it is void if repugnant to the estate before granted. 2 Bla. Com., 298; 4 Kent, 468. Chancellor Kent observes that in modern conveyancing the habendum clause in deeds has degenerated into a mere useless form, for the deed is good without it under the usual specifications in the premises. If this deed can be regarded as containing the formal parts referred to, the first clause, conveying a life-interest, is only enlarged to an absolute estate in the second. The last is not repugnant to the first, but only extends the interest.
But it is presumed that the conveyancers, or rather the draughtsmen of instruments, (for every ready writer is now regarded as sufficient for the construction of' the most intricate and important title papers, greatly to the prejudice of estates,) have but rarely in their minds the office and effect of the various parts of a formal deed. The only safe rule, perhaps, is to look to the whole instrument, and place such fair construction upon it as to carry out as nearly as practicable the intention of the parties, as it may be collected from the whole instrument. *227 It is true, as argued by the counsel for tbe defendants, that the first clause in a deed and the last in a will must prevail when they are in conflict; but this is only where there is an irreconcilable repugnance, and both cannot stand. But that is not the case here, where the latter does no more than extend and enlarge the former.
It is clear, we think, that this deed conveys a fee to Polly Owen, to which the marital right attached, unless the terms of the deed are sufficient to secure the slave to her sole and separate use.
And this is the second ground of defence. The words relied upon for this purpose are, “to have and to hold the said negro girl free from the lawful claims of all and every person whomsoever.” It is true, the intention of the party is the rule of construction, where there is no positive rule of law in the way, but that intention must be arrived at from the words used, taken in their legal sense or technical meaning, where any such has been affixed to them; if not, in their ordinary sense.
On this question it has been invariably held that it will not defeat the common law right of the husband to the wife’s property because the phraseology is such as to excite a belief that such was the aim and intention of the grantor, but that, in order to produce this effect, a ■ clear and decided purpose must be evinced in the deed to exclude the marital right: words of exclusion are indispensable. Upon reference to the cases collected in the text-books from reported cases, it will be found very difficult to draw the line between the two classes of cases, as the question involves some very nice distinctions. *228 The doctrine is "well presented and the cases on both sides collected in 2 Sto. Eq., § 1378, and the several following sections. It is there said, in § 1381, that “the purpose must clearly appear beyond any reasonable doubt, otherwise the husband will retain his ordinary legal and marital rights.”
But the question has been often before this Court, and is well settled. The great difficulty, however, is to apply the principle to particular cases. In 8 Yerg., 33, it was held, that the gift being to a married woman by name, without naming the husband, did not exclude the husband, but his right would immediately attach. Thompson vs. McKisick, 3 Humph., 631, is a strong case. The Court there say that “the intention must clearly appear, by the use of expressions that plainly denote an exclusion of the husband.” The case of Eves vs. Gillespie, 1 Swan, 128, reaffirms the same doctrine to the full extent, and the Court remark that “the intention to exclude the fixed common law right of the husband should le perfectly manifest.” The last case is reported in 1 Sneed, 480, Houston vs. Embry, and is in perfect accordance with the anterior cases above recited. We think the principle of this last case cannot be distinguished from the one under consideration. The words relied upon in the case before us are nothing more than a common clause of warranty, informally and awkwardly expressed. But no other effect can be given to them. They fall considerably short of coming up to the standard established in our own cases on this subject.
With every inclination, in all such cases, to save the property to the wife, we cannot depart from the settled *229 rules of property to do so. No matter wbo suffers, tbe law must have its course, and all men be secured in their legal rights.
The decree of the Chancellor, subjecting this slave to the payment of the husband’s debt, must be affirmed, and the case remanded for the execution of the decree.